GAYLORD HOSPITAL *v.* ROBERT N. MASSARO ET AL.
(3857)

SPALLONE, DALY and HADDEN, Js.

Argued September 17—decision released November 12, 1985

*Ronald E. Cassidento,* with whom, on the brief, was *Eric Carlson,* legal intern, for the appellant (defendant Rose M. Massaro).

*Vincent J. Dooley,* with whom, on the brief, was *Leon J. Govin,* for the appellee (plaintiff).

DALY, J. The plaintiff, Gaylord Hospital, instituted this action to recover costs for hospital and medical care rendered to the named defendant, Robert N. Massaro,[1] the husband of the defendant Rose Massaro. The trial

---

[1] The named defendant, Robert N. Massaro, died after the initial complaint was filed and was dropped as a party under the allegations of the amended complaint dated October 17, 1984.

court accepted the factfinder's report and rendered judgment for the plaintiff in the amount of $13,500.09, from which judgment the defendant appeals.

The factual situation does not appear to be in dispute. As a result of an unfortunate swimming pool accident, Robert Massaro suffered severe back injuries which led to his admission to the plaintiff's facility on September 19, 1974. The defendant, Rose Massaro, and Robert Massaro were married although they had been living apart at the time of the husband's accident. The defendant executed a written agreement with the plaintiff whereby she agreed to be responsible for all hospital and medical services rendered to her husband who remained in Gaylord Hospital from September 19, 1974, through June 20, 1975. The total bill for hospital and medical care rendered for that period was $40,559.54, of which there remained a balance of $13,500.09. Suit was instituted by the plaintiff in November, 1980, for collection of the balance, which the defendant refused to pay.

The sole issue on appeal is whether the statute of limitations, General Statutes § 52-576, commenced to run on September 19, 1974, the date the patient was hospitalized, or on June 20, 1975, the day the patient was released. If the date of admission to the hospital is the time from which the six year statute began to run, then the action brought in November, 1980, on the defendant's agreement to pay the hospital bill would be barred.

At the time of trial, General Statutes (Rev. to 1979) § 52-576 provided, in pertinent part, that "[n]o action for an account . . . on any simple or implied contract, or upon any contract in writing, shall be brought but within six years next after the right of action accrues." The writ was served in November, 1980. Under the statute of limitations, the plaintiff's cause of action

would be barred unless it accrued within six years of serving the writ. *Seaboard Burner Corporation* v. *DeLong,* 145 Conn. 300, 303, 141 A.2d 642 (1958).

While the statute of limitations normally begins to run immediately upon the accrual of the cause of action, some difficulty may arise in determining when the cause or right of action is considered as having accrued. The true test is to establish the time when the plaintiff first could have successfully maintained an action. That is, an action cannot be maintained until a right of action is complete and, hence, the statute of limitations cannot run before that time. 51 Am. Jur. 2d, Limitation of Actions § 107. "The settled rule that the statute of limitations begins to run upon the accrual of a cause of action applies in actions on implied and quasi contracts." Id., § 134. In an action for breach of contract, the cause of action is complete upon the occurrence of the breach, that is, when the injury has been inflicted. *Kennedy* v. *Johns-Manville Sales Corporation,* 135 Conn. 176, 180, 62 A.2d 771 (1948). In a contract where a defect in roof construction was discovered, a breach or injury is considered to have occurred only when the defective roof was completed. *Beckenstein* v. *Potter & Carrier, Inc.,* 191 Conn. 150, 158, 464 A.2d 18 (1983). Here, the right of action may be said to have accrued upon the completion of services rendered to the patient, and not at the time he was admitted or during the time he was being treated.

The patient received continuous medical treatment during his hospitalization from September 19, 1974, through June 20, 1975, which the factfinder and the trial court found to be a single course of treatment.[2] "Where services are continuously rendered over an

---

[2] It should be noted that following this initial period of hospitalization, the patient, Robert Massaro, was admitted to the plaintiff's facility on two other occasions: from October 6, 1977, through October 21, 1977, and from November 13, 1977, through November 29, 1977.

extended period of time under an express or implied contract which does not fix the term of employment nor the time when compensation shall be payable, many courts have regarded the contract as an entire one, raising an implied condition that the compensation shall not be due until the termination of the service, so that the statute of limitations will not begin to run against the claim for compensation until the employment is ended." Annot., 7 A.L.R.2d 200.

In applying the statute of limitations in contract actions, a distinction has also been made between "a contract obligation . . . providing for a continuing, indivisible responsibility for the attainment of an end result, and a contract for the performing of a specific, definable act." *Skidmore, Owings & Merrill* v. *Connecticut General Life Ins. Co.,* 25 Conn. Sup. 76, 93, 197 A.2d 83 (1963).

"Where the parties to a contract for medical services neglect to stipulate a date on which payment is due, some courts attempt to give effect to their presumed intention by discerning whether the agreement constituted an indivisible contract, against which the statute of limitations would not begin to run until all services were terminated or the contract completed, or a severable contract, as to which a cause of action accrues, and the statute of limitations commences to run, after each individual service is performed. The distinction is made on the basis of whether the physician was retained to render continuous and related services usually connected with a particular affliction." Annot., 99 A.L.R.2d 253.

Medical malpractice actions may likewise "be applied to a single act of a physician or . . . to a course of treatment." *Giambozi* v. *Peters,* 127 Conn. 380, 385, 16 A.2d 833 (1940). If injury is inflicted as a result of a specific act of the physician, then the statute begins

to run from that time. "When, however, the injurious consequences arise from a course of treatment, the statute does not begin to run until the treatment is terminated." Id.

In this case, the contract for medical services was continuing and indivisible, and terminated with the patient's release from the hospital. We hold that June 20, 1975, when Robert Massaro was released from the plaintiff's facility, was the time when the plaintiff could first have maintained the action to a successful conclusion, and not September 19, 1974, as claimed. The plaintiff's action to recover on a debt for hospital services, therefore, was timely filed within the six year period encompassed by the statute of limitations.

There is no error.

In this opinion the other judges concurred.