[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On June 15, 1993, the plaintiffs Dennis J. and Jane A. Bigler (Biglers), filed a four count complaint against the defendants, Centerbank Mortgage Company (CMC) and Centerbank, alleging negligence, misrepresentation through non-disclosure, fraudulent misrepresentation and CUTPA, respectively. The plaintiffs alleged that sometime prior to June, 1987, they entered into a purchase and sale agreement for real property for which the defendants provided the financing. The plaintiffs alleged that at the closing on July 24, 1987, they executed a promissory note and mortgage deed in favor of the defendant. The plaintiffs further alleged in the July 15, 1993 complaint that the defendants failed to inform the plaintiffs that the property they were purchasing was located in a special flood hazard area, as they were required to do by applicable federal law and regulations. As a result of the defendants failure to so inform the plaintiffs, their property was not covered by a flood insurance policy, and they sustained damage to their home and possessions on December 11, 1992, when their property was flooded.
On September 7, 1993, the plaintiffs moved to amend their complaint to add two counts. The court, Gray, J., overruled the defendants' objection to the plaintiffs' motion to amend on January 10, 1994. In count five of the amended complaint, the plaintiffs asserted a breach of contract claim based on the defendants' failure to disclose. In count six, the plaintiffs asserted a CUTPA cause of action.
On April 15, 1994, the plaintiffs filed a six count revised; complaint, asserting the same causes of action as alleged in their prior complaints.[1] On December 12, 1994, the court, Hadden, J., granted the defendants' motion to strike counts one through four and six. On February 1, 1995, the plaintiffs filed a one count revised complaint alleging breach of contract based on the defendants' failure "to advise the plaintiffs that the property which they were purchasing was located in a special flood hazard area, which requirement necessitated the plaintiffs purchasing flood insurance" On August 8, 1995, the defendants filed an answer to the plaintiffs' complaint and asserted three special defenses. On August 22, 1995, the defendants moved for summary judgment on the plaintiffs' complaint based on their first special CT Page 1401-QQ defense that the plaintiffs' action is barred by the statute of limitations In support of their motion, the defendants filed a memorandum of law and numerous exhibits, including, inter alia, deposition testimony of June Bigler, copies of the plaintiffs' earlier complaints in this action, and a copy of the mortgage agreement. On October 6, 1995, the Biglers filed an objection to the motion for summary judgment and a memorandum in support along with a copy of a letter dated March 15, 1993 from CMC to the Department of Banking, a letter dated July 23, 1993 from the Department of Banking to the Biglers, a copy of the mortgage agreement and a letter dated December 15, 1992 from the Town of East Haven to the Biglers.
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue . . . Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court in support of a motion for summary judgment" (Citations omitted; internal quotation marks omitted)Home Insurance Co. v. Aetna Life Casualty Co., 235 Conn. 185,202-3, ___ A.2d ___ (1995).
The defendants move for summary judgment on the ground that the Biglers' breach of contract claim, which arose on or before July 24, 1987 and was raised no earlier than September 1, 1993[2], is barred by General Statutes § 52-576, the six year statute of limitations applicable to written contracts. The Biglers argue in opposition that the statute of limitations began to run on December 11, 1992, when the flood occurred, not the date of the mortgage agreement, and therefore the claim was timely made. In the alternative, the Biglers argue that CMC is estopped from raising this defense after acknowledging its breach of duty. Finally, the Biglers argue that the breach of contract claim is not a separate and distinct cause of action and "relates back" to the tort/CUTPA claims asserted in the original complaint.
CT Page 1401-RR "Summary judgment is appropriate where the action is barred by the statute of limitations." Sanborn v. Greenwald, 39 Conn. App. 289,293, ___ A.2d ___ (1995) "Black's Law Dictionary defines "statute of limitations" as [a] statute prescribing limitations to the right of action or certain described causes of action . . . that is, declaring that no suit shall be maintained . . . within a specified period of time after the right accrued . . . The purposes of statutes of limitation include finality, repose and avoidance of stale claims and stale evidence" (Internal quotation marks omitted.) Connecticut Bank Trust Co. v. Winters, 225 Conn. 146,165 n. 20, 622 A.2d 536 (1993)
The defendants argue that the Biglers' cause of action arose, at the latest, on July 24, 1987, the date of the closing and execution of the mortgage, when the defendants allegedly failed to advise the Biglers that their property was located in a special flood hazard area. The Biglers argue that their cause of action arose and the statute of limitations began to run on December 11, 1992, the date of the flood.
General Statutes § 52-576 states in pertinent part, "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues." Id. In Balboa Insurance Co. v.Zaleski, 12 Conn. App. 529, 532 A.2d 973 (1987), cert. denied,206 Conn. 802, 535 A.2d 1315 (1988), the court, interpreting this statute, held that "[a]pplied to a cause of action, the term to accrue means to arrive; to commence; to come into existence; to become a present enforceable demand." (Internal quotation marks omitted) Id., 533-34.
In Gaylord Hospital v. Massaro, 5 Conn. App. 465,499 A.2d 1162 (1985), the court held, "The true test is to establish the time when the plaintiff first could have successfully maintained an action. That is, an action cannot be maintained until a right of action is complete and, hence, the statute of limitations cannot run before that time. In an action for breach of contract, the cause of action is complete upon the occurrence of the breach, that is, when the injury has been inflicted." (Citations omitted.) Id., 467. "[W]hile the application of [this] rule may result in occasional hardship, it is well established that ignorance of the fact that damage has been done does not prevent the running of the statute except when there is something tantamount to a fraudulent concealment of a cause of action." (Internal quotation marks omitted.) Beckenstein v. Potter Carrier Inc., 191 Conn. 150, 156, CT Page 1401-SS464 A.2d 18 (1983).
The Biglers' cause of action arose on July 24, 1987, when they purchased the property and the defendants failed to inform them that the property was located in a special flood hazard area. This is when the breach occurred, when the plaintiffs' injury was inflicted. Accordingly, the Biglers breach of contract claim, which was first raised in the plaintiffs' amended complaint filed on September 7, 1993, is barred by General Statutes § 52-576 if it does not relate back to the original complaint, for the six year limitation set forth in that statute would have run on the plaintiffs' cause of action on July 24, 1993.
"[A]mendments to a complaint, unless they allege a new cause of action, relate back to the date of the complaint." Saphir v.Neustadt, 177 Conn. 191, 207 ___ A.2d ___ (1979) "A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. It is proper to amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same, but where an entirely new and different factual situation is presented, a new and different cause of action is stated. . . . Our relation back doctrine provides that an amendment relates back when the original complaint has given the party fair notice that a claim is being asserted stemming from a particular transaction or occurrence, thereby serving the objectives of our statute of limitations, namely, to protect parties from having to defend against stale claims. . . ." (Citations omitted; internal quotation marks omitted.) Barrett v. Danbury Hospital, 232 Conn. 242, 263, ___ A.2d ___ (1995). The Supreme Court has "previously recognized that our relation back doctrine is akin to rule 15(c) of the Federal Rules of Civil Procedure, which provides in pertinent part: (c) RELATION BACK OF AMENDMENTS. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. . . . The policy behind rule 15(c) is that a party, once notified of litigation based upon a particular transaction or occurrence, has been provided with all the notice that statutes of limitations are intended to afford. Because rule 15 provides that an amendment relates back where the original complaint has given the party fair notice that a claim is being asserted stemming from a particular transaction or occurrence, the objectives of our statute of limitations, namely, to protect CT Page 1401-TT parties from having to defend against stale claims, is fully served." (Citation omitted; internal quotation marks omitted.)Gurliacci v. Mayer, 218 Conn. 531, 547-48, 590 A.2d 914 (1991).
"There has been considerable confusion and conflict among courts attempting to discern what constitutes a new cause of action. However courts agree that the amendment and the original complaint must arise from a single group of facts claimed to have brought about an unlawful injury to the plaintiff which entitles the plaintiff to relief." Kanca v. First National Supermarkets,
Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 281971 (June 22, 1993, Ballen, J.).
In the present case, the court, therefore, must determine whether the contract claim arises out of the same facts and circumstances as alleged in the earlier claims.[3] The court must also decide whether there is a sufficient relationship between the contract claim and the earlier tort and CUTPA claims to give the defendants fair notice and a chance to defend against the new action. While the defendants are entitled to fair notice, "it is not unreasonable to require [the defendants] to anticipate all theories of recovery and prepare its defense accordingly." Stranov. Maxwell, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 505137 (May 10, 1994, Corradino, J.) "Furthermore, Connecticut courts have given a liberal interpretation to the relation back doctrine." Putnam Resources v.Frenkel Co., Inc., Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 123838 (July 10, 1995, Karazin, J.)
The Biglers' breach of contract claim arises out of the same facts as the CUTPA and tort claims alleged in their original complaint. The breach of contract claim does not set forth "an entirely new and different factual situation" but rather "amplifies and expands what has already been alleged." The Biglers' CUTPA/tort claims and the breach of contract claim are rooted in a simple group of facts, the defendants' failure to warn, in breach of statutory and contractual obligations, that the property being purchased by the plaintiffs was located in a special flood hazard area. Accordingly, the defendants' breach of contract claim relates back to the earlier CUTPA and tort claims and thus is not barred by the statute of limitations.
The defendants argue that should the court find the claim "relates back," this doctrine cannot be applied because the CT Page 1401-UU contract claim has nothing to relate back to since the four claims originally asserted by the plaintiffs were stricken. In support of this argument the defendants rely on the decision of the court inDesign Coatings v. Natural Gas Co., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 088318 (June 26, 1991, Lewis, J.).
In that case, the plaintiffs amended their complaint to assert two additional counts, one of which would be barred by the applicable statute of limitation unless it related back to claims made earlier by the plaintiffs. Prior to the plaintiffs' filing of its amended complaint, however, summary judgment in favor of the defendant had entered on the claims relied upon by the plaintiffs for their relation back argument. The court found that the relation back doctrine did not apply since the acts giving rise to the original claims and those in the amendment complaint did not constitute a single group of facts. The court further noted that the original causes of action to which the amended cause of action was claimed to relate back had both been dismissed; so there was nothing for the amended claim to relate back to.
The procedural facts of the present case can be distinguished from those of Design Coatings. In the present case, the plaintiffs filed their amended complaint on September 7, 1993, at which time none of the plaintiffs' original claims had been stricken. It therefore cannot be said that at the time the plaintiffs' filed their amended complaint there was nothing for those claims to relate back to.
The Biglers assert that there is a genuine issue of material fact as to whether CMC waived or is estopped from raising a statute of limitations defense after acknowledging its failure to inform the Biglers of the flood zone.[4] "This court, while recognizing the analytic distinction between express waiver and estoppel, has held that `implied waivers and estoppels by conduct are so similar that they are nearly indistinguishable.'" O'Hara v. State, 218 Conn. 628,641, 590 A.2d 948 (1991). "Waiver is the intentional relinquishment of a known right." Id., 351. "Waiver can be express or may consist of acts of conduct from which a waiver may be implied. . . . Waiver may be implied from acts or conduct if it is reasonable to do so." B B Corp. v. Lafayette American Bank Trust, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 309876 (May 20, 1994, Fuller, J.), citingNational Casualty Insurance Co. v. Stella, 26 Conn. App. 462, 464,601 A.2d 557 (1992) and Wadia Enterprises, Inc. v. Hirschfeld,
CT Page 1401-VV224 Conn. 240, 252, 618 A.2d 506 (1992).
CMC's letter to the Department of Banking did not constitute an express waiver of its right to raise a statute of limitations defense. The six year statute of limitations for the breach of contract claim began to run as of July 24, 1987, requiring a cause of action to be brought on or before July 24, 1993. Lastly, on March 13, 1993, CMC did not have a "known right" to raise a statute of limitation defense because the Biglers had a timely claim. Therefore, CMC could not have expressly intended to waive a right that had not yet accrued.
However, this court should consider whether CMC impliedly waived their right to bring this defense. In Novella v. HartfordAccident and Indemnity Co., 163 Conn. 552, 316 A.2d 394 (1972), the court held, "a waiver implied by law from the defendant's conduct on principles of equity, or a type which might be characterized as being somewhat similar to estoppel. . . . When the term waiver is used, however, the elements of an estoppel almost invariably appear, and it is quite apparent that it is employed to designate, not a pure waiver but one which has come into an existence of effectiveness through the application of the principles underlying estoppels." (Citations omitted; internal quotation marks omitted.) Id., 563-64.
In Middlesex Mutual Assurance Co. v. Walsh, 218 Conn. 681,590 A.2d 957 (1991), the court outlined two elements which must be demonstrated in order to assert an implied waiver or estoppel claim, "Under Connecticut law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . It is the burden of the party asserting a claim of estoppel to establish the existence of the elements essential to estoppel . . . and whether that burden has been satisfied in a particular case is an issue of fact." (Citations omitted; internal quotations omitted.) Id., 699. In addition to the above, the court must conclude, "[f]or estoppel to exist, there must be misleading conduct resulting in prejudice to the other party." Lunn v. Tokeneke Association. Inc.,227 Conn. 601, 607, ___ A.2d ___ (1994). "In the absence of prejudice, estoppel does not exist." Spear-Newman, Inc. v. ModernFloors Corporation, 149 Conn. 88, 91, 175 A.2d 565 (1961). CT Page 1401-WW
The first element as outlined in Middlesex requires the court to decide whether the defendants' conduct was calculated or intended to induce the Biglers to delay the initiation of this action. The only evidence offered by the Biglers to support this claim is an admission contained in a letter from CMC to the Department of Banking, dated March 13, 1993. The letter states in pertinent part, "Ms. Otis [defendants' employee] phoned Mr. Bigler and stated that an error did occur and that CMC [defendant] did not want this situation to become adversarial." Memorandum in Opposition, Exhibit A, p. 1.
CMC's admission was an attempt to resolve the conflict and avoid litigation, not to induce the Biglers to abandon their claim. CMC responded to the Biglers' complaint, investigated the facts and offered a settlement that was ultimately rejected within the statutory time limit. Further, the Biglers have offered no evidence to prove that they were prejudiced, misled or induced by the defendants' actions to delay initiation of their action.
Accordingly, the Biglers have failed to prove that they had a reasonable belief that the defendants intended to take any further action to resolve the conflict after making their settlement offer. The Biglers have provided no statutory or legal authority to support their claim that such an admission is deemed a waiver. "[A] party claiming waiver has the burden of proving it." CiticorpMortgage, Inc. v. Tarro, 37 Conn. App. 56, 60, ___ A.2d ___ (1995). However, if the court is persuaded that this element has been proven by the Biglers, then the court must determine whether the second element has been established.
The second element requires the Biglers to demonstrate that CMC's admission led them to change their position in reliance on that admission and thereby incurred injury. The Biglers' injury would be their failure to bring suit within the statutory timeframe. "If conduct or action on the part of the [defendant] is responsible for the [plaintiff's] failure to comply in time with the conditions precedent . . . injustice is avoided and adequate relief assured without doing violence to the plain language used by the legislature, by resort to traditional principles of waiver and estoppel." Boyce v. Allstate Insurance Co., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 374599 (January 4, 1994, Corradino, J., 9 CSCR 90). The March 13 letter supports the opposite conclusion. On page 2 of the letter, CMC states: "On March 12, 1993 CMC received your letter regarding CT Page 1401-XX the complaint by the Biglers of January 6, 1993 and a letter fromthe Biglers' attorney wishing to discuss the matter further beforeproceeding with litigation." (Emphasis added.) Memorandum in Opposition, Exhibit A, p. 2.
This letter suggests that the Biglers were not induced by CMC to delay in bringing their claim. Rather, as of March 13, the Biglers had apparently already retained counsel to initiate this suit. At that time, the Biglers were or should have been aware of the statutory time limit pertaining to this cause of action. Therefore, the Biglers' failure to raise their claim within the statutory period was not a result of any reliance on or inducement by CMC, thus the second essential element as outlined in Middlesex
has not been met.
"The conclusion that a party has waived a right is one of fact for the trier and not one which can be drawn by the court, unless, on the subordinate facts found, such a conclusion is required as a matter of law." Harlach v. Metropolitan Property Liability Ins.,221 Conn. 185, 193, 602 A.2d 1007 (1992). The subordinate facts outlined above have failed to demonstrate a genuine issue of material fact to defeat the summary judgment motion based upon the theory of waiver and estoppel.
Because the plaintiffs' breach of contract action relates back to the tort/CUTPA claims alleged in the plaintiffs' original complaint, the plaintiffs' cause of action is not barred by General Statutes § 52-576. Accordingly, the defendants' action for summary judgment is denied.
Howard F. Zoarski, Judge