Elizabeth DENNIS, Plaintiff,

v.

**ICL, INC., Successor in Interest to Datachecker Systems, Inc., Defendant.**

Civil No. 3:94–2085 (DJS).

United States District Court, D. Connecticut.

March 31, 1997.

Matthew Shafner, Thomas W. Teixeira, II, O'Brien, Shafner, Stuart, Kelly & Morris, Groton, CT, for Elizabeth Dennis.

Philip J. O'Connor, Kenneth G. Williams, Gordon, Muir & Foley, Hartford, CT, for ICL, Inc.

## MEMORANDUM OPINION AND ORDER

SQUATRITO, District Judge.

The plaintiff in this product liability action alleges that, while she was employed as a supermarket cashier, she suffered repetitive strain injuries ("RSI") to her hands and wrists, including carpal tunnel syndrome ("CTS"), as a result of using cash registers/scanners manufactured by the defendant. The plaintiff was aware of and treated for symptoms indicative of CTS in September 1991, more than three years before she initiated this action. The plaintiff's symptoms, however, also could have indicated other possible conditions, and the plaintiff was not diagnosed with CTS—and two differential diagnoses were not eliminated—until November 1991, less than three years before she filed suit.

Presently, the defendant moves for summary judgment on the ground that this action is barred because the applicable three-year statute of limitations expired before the plaintiff initiated this action. Because the plaintiff's cause of action accrued more than three years before she filed suit, this Court grants summary judgment in favor of the defendant.

### BACKGROUND

Beginning in May 1984, Elizabeth Dennis, the plaintiff, operated a check-out at a Stop & Shop supermarket. This job required her to place objects with price codes in front of a scanner. Because the scanner was in one fixed location, the plaintiff had to twist each item so that the scanner could "read" the code. (Pl.'s Opp'n to Def.'s Motion for Summ. J. ("Pl.'s Opp'n") at 3). The plaintiff claims that she first developed physical problems from this repetitive work activity on September 19, 1991. (Id.)

That same day, the plaintiff informed her supervisor that she was injured, and obtained from her employer a "Work Capabilities Report." (See Def.'s Motion for Summ. J. ("Def.'s Motion"), Ex. D.) Describing this report, the plaintiff said, "[t]his is the form they give you when you go to the doctor when you've been injured at work." (Pl.'s Dep. at 173–74.) Ms. Dennis left work that day, September 19, 1991, and went to a family practitioner, Dr. Parmelee. Dr. Parmelee examined Ms. Dennis and informed her that her injuries might be due to her work. (Pl.'s Resp. to Def.'s Second Set of Interrogs., Feb. 2, 1996, Answer to Interrog. No. 3; Pl.'s Dep. at 162.) Dr. Parmelee diagnosed the plaintiff with "overuse syndrome, question of arthritis." (Dr. Parmelee Dep. at 11.) According to Dr. Parmelee, "overuse syndrome is a term used for complaints or physical signs that develop in the face of repetitive motion . . . ." (Id. at 12.)

This Court gives full credit to the documentary evidence from the plaintiff's September 19, 1991, office visit, which shows that Ms. Dennis believed at that time that her condition was work-related. First, Ms. Dennis's intake record, based on information that she provided at the start of that office visit, states that her condition is work-related. (See Id. at 42.) Second, Ms. Dennis signed a form acknowledging that she would be responsible for her medical bills if her employer denied her workers' compensation claim, thereby indicating that she planned to file a workers' compensation claim for her necessarily work-related injury. (Def.'s Motion, Ex. C.) Third, Ms. Dennis gave Dr. Parmelee the "Work Capabilities Report" that she obtained from her employer for her work-related injury; Dr. Parmelee completed this report and returned it to Ms. Den-

nis's employer. (Dr. Parmelee Dep. 19–20, 24; Def.'s Motion, Ex. D.)

Following her first visit to Dr. Parmelee, Ms. Dennis's condition worsened. Ms. Dennis claims that when she returned to Dr. Parmelee's office on September 25, 1991, she was experiencing numbness and tingling in her thumb and index finger, and pain radiating up her forearm. (Dr. Parmelee Dep. at 25–26.) Dr. Parmelee at that time assessed the plaintiff as having problems with repetitive motion, causing overuse syndrome and tendinitis. (Id. at 25–26.) Dr. Parmelee suggested that Ms. Dennis return for another follow-up examination four weeks later, after she took a three-week vacation from work, to see if her condition lessened during this hiatus from her repetitive motion at Stop & Shop. (Id. at 29.) Dr. Parmelee later stated that his suggestion at this September 25, 1991, visit indicates that he likely suspected at that time that the plaintiff's problems were caused by her work. (Id. at 29–30.)

When the plaintiff returned to Dr. Parmelee's office on October 18, 1991, it was evident that her symptoms had continued to worsen. Ms. Dennis yielded a positive Phalen's test on her right hand, meaning that pressure on the carpal tunnel nerve elicited numbness and tingling; according to Dr. Parmelee, this "leads one to suspect carpal tunnel [syndrome]." (Id. at 32.) Two and one half weeks later, on November 5, 1991, Ms. Dennis returned to Dr. Parmelee's office. At that time, he diagnosed Ms. Dennis as having CTS as a result of her work as a Stop & Shop cashier.

On November 1, 1994, the plaintiff initiated a product liability action in Connecticut Superior Court; approximately one month later, the defendant removed the case to federal court. Now, the defendant moves for summary judgment based on the claim that this case is barred by Connecticut's product liability statute of limitations. Because there exists no genuine issue of material fact that the plaintiff failed to bring this action within the applicable three-year statute of limitations, this Court grants summary judgment in favor of the defendant.

## DISCUSSION

### A. Legal Standards

Summary judgment is proper only if, viewing all evidence in the light most favorable to the nonmovant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The Court should not resolve disputed issues of fact, but rather must assess whether there are any factual issues to be tried. *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The Second Circuit has noted that "[t]hese principles apply whether summary judgment is granted on the merits of the claim, or on an affirmative defense such as the statute of limitations." *Buttry v. General Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir.1995).

Accordingly, while a statute of limitations defense lends itself "to proof required by Rule 56 and therefore [may be] asserted successfully" on a motion for summary judgment, *BellSouth Telecomm., Inc., v. W.R. Grace & Co.* 77 F.3d 603, 606 (2d Cir.1996) (*citation omitted* ), "[t]he court will refuse to grant summary judgment for the defendant if there is an issue of fact as to when the limitations period began." *Id.*

This action arises under Connecticut's product liability statute, which governs claims against product manufacturers for "harm caused by a product." Conn. Gen. Stat. § 52–572n(a). The statute defines "harm" as "damage to property . . . and personal injuries including wrongful death . . ." Id. § 52–572m(d). The statute of limitations governing Connecticut product liability claims provides:

> [n]o product liability claim as defined in section 52–572m shall be brought but within three years from the date when the injury, death or property damage is first sustained or discovered or in the exercise of reasonable care should have been discovered. . . .

Id. § 52–577a.

Ms. Dennis filed her complaint on November 1, 1994. Her claim is time-barred, there-

fore, if she could have maintained a claim under Connecticut law against the defendant for her repetitive strain injuries before November 1, 1991. The full record before this Court shows that there exists no genuine issue of material fact regarding the conclusion that the plaintiff could have maintained a product liability claim before November 1, 1991. Therefore, the plaintiff's action is barred by the statute of limitations, and the Court must grant summary judgment in favor of the defendant.

### B. When Repetitive Strain Injury Claims Accrue

 A claim "is first sustained or discovered," so as to trigger the running of the statute of limitations, at the point "when the plaintiff first could have successfully maintained an action." *BellSouth*, 77 F.3d at 610, citing, *Gaylord Hosp. v. Massaro*, 5 Conn. App. 465, 467, 499 A.2d 1162, 1163 (1985). To determine whether the plaintiff's cause of action has accrued, "[t]he focus is on the plaintiff's knowledge of the facts, rather than on discovery of the applicable legal theories." *Id.*, citing, *Catz v. Rubenstein*, 201 Conn. 39, 43, 513 A.2d 98, 100 (1986) (discussing when "actionable harm" occurs so as to trigger statute of limitations). *See also, West Haven Sch. Dist. v. Owens–Corning Fiberglas Corp.*, 721 F.Supp. 1547, 1556 (D.Conn.1988) (stating that alleged harm becomes actionable when plaintiff has "discovered all the essential elements of the cause of action it seeks to assert. . . .").

 Therefore, a plaintiff is able successfully to maintain an action when: (1) the defendant has acted in a tortious manner; (2) the plaintiff has sustained actual injury as a result of the defendant's actions; and (3) the plaintiff knows of the causal connection between the defendant's tortious conduct and the resulting injury to the plaintiff. *See BellSouth*, 77 F.3d at 610–11 (determining when product liability actions accrue for statute of limitations purposes); *West Haven Sch. Dist*, 721 F.Supp. at 1556 (same).

### C. When Ms. Dennis's Claim Accrued

Ms. Dennis asserts two arguments to support her position that her claim did not ac-

crue until November 5, 1991. First, Ms. Dennis alleges that her injuries in September and October were not continuous but rather, "separate and distinct" from her CTS injury and, therefore, a new limitations period for her CTS claim was triggered when she first was diagnosed with CTS on November 5, 1991. (Pl.'s Opp'n at 2.) Second, Ms. Dennis maintains that even if she experienced only one injury, she did not discover that injury until November 5, 1991, when her treating physician, Dr. Parmelee, diagnosed her with employment-caused CTS, and discredited two differential diagnoses, the source of which conditions would have been unrelated to her employment. (Pl.'s Sur–Reply at 4.) Neither of these arguments is persuasive, as discussed below.

#### 1. Ms. Dennis's Injury

 This Court rejects the plaintiff's claim that her CTS injury was separate and distinct from the symptoms for which she was treated in September and October 1991. It is undisputed that all of the plaintiff's symptoms arose from her repetitive use of the cash register/scanner at the Stop & Shop checkout. (*See* Def.'s Mem., Ex. I.) In an employee questionnaire that Ms. Dennis completed in February 1992, regarding her injury, Ms. Dennis stated that she was injured in "early September." (Id., No. 7.) Describing how she was injured, the plaintiff wrote:

> [t]his is a repetitive motion problem. The act of lifting, twisting, pushing, grasping of heavy, bulky products over and over for long, continuous periods of time, causes this condition to appear (right thumb first locked during bending, and then became fixed in place).

(Id., No. 8.)

When asked whether this activity was part of the job, the plaintiff responded, "[t]his activity *is the job!*" (Id., emphasis in original.) The plaintiff next stated that this injury was not caused by anyone other than her employer or fellow employee. (Id., No. 9.) Then, when asked whether her injury was due to the use of any machine, Ms. Dennis

responded, "[y]es, if [a] cash register is considered a machine." (Id., No. 10.)

The persuasive evidence shows that the plaintiff's CTS arose out of the same conditions as those that caused her trigger thumb, tendinitis, and other hand and wrist ailments that she began to experience in September 1991, and there is no evidence to the contrary. Therefore, there exists no genuine issue of material fact regarding the conclusion that Ms. Dennis's CTS merely is a continuation of her earlier injuries, and is not a "separate and distinct" injury for statute of limitations purposes. *Einhorn v. AT & T,* 1996 WL 684399 (D.Conn.1996) (plaintiff's left CTS merely was continuation of right-hand condition where same instrumentality caused both conditions); *Parajecki v. IBM,* 899 F.Supp. 1050 (E.D.N.Y.1995) (although plaintiff's right trigger finger syndrome was diagnosed within limitations period accruing from date of injury, that condition nevertheless was barred because it arose from same conditions that caused plaintiff's tendinitis and bilateral CTS, which plaintiff sustained outside limitations period). *See also, Burns v. Hartford Hosp.,* 192 Conn. 451, 472 A.2d 1257 (1984) (statute of limitations began to run when child's leg first became noticeably infected, not when infection later developed into permanent scarring and injury's full effect became known to plaintiff); *BellSouth Telecomm., Inc. v. W.R. Grace & Co.,* 77 F.3d 603, 614 (2d Cir.1996) (discussing *Burns* ).

### 2. *When Ms. Dennis Discovered Her Injury*

■ Ms. Dennis argues that her claim did not accrue until Dr. Parmelee diagnosed her with work-related CTS on November 5, 1991, because before that time her actual injury had not yet occurred, and damages would have been too speculative. *See BellSouth,* 77 F.3d at 613–14 (rejecting plaintiff's claim that it should not be charged with discovery of injury until plaintiff "knew with certainty" that injury existed, and to what extent plaintiff was injured); *see also, Cruden v. Bank of New York,* 957 F.2d 961, 977 (2d Cir.1992) (finding plaintiff could not show injury and thus did not have actionable claim, "where the damages arising from defendant's con-

duct are speculative or their amount and nature unprovable"). To accept the plaintiff's claims, "would vitiate all discovery statutes of limitation[s]," and "postpone accrual until a time of plaintiff's own choosing." *BellSouth,* 77 F.3d at 614 (citations omitted).

■ In *Burns,* the Court ruled that "injury is first sustained" for statute of limitations purposes, "when a party suffers some form of actionable harm. The harm need not have reached its fullest manifestation before the statute begins to run." *Burns,* 192 Conn. at 460, 472 A.2d at 1261. Therefore, once the plaintiff discovers "some form" of injury, the statute of limitations begins to run, even when the plaintiff has not yet discovered the full manifestation of that injury. *Id.; see also Gnazzo v. G.D. Searle & Co.,* 973 F.2d 136, 138 (2d Cir.1992) *quoting Lambert v. Stovell,* 205 Conn. 1, 7, 529 A.2d 710, 713 (1987) (claim accrued when plaintiff was "aware of circumstances indicating that he had suffered a form of 'actionable harm' and should have discovered his injury at that time").

Similarly, Ms. Dennis's claim accrued when she first sought treatment for her injuries, even though she did not know those injuries were or would develop into the more serious condition of CTS, because it is undisputed that her CTS arose from the same conditions as those that caused her earlier symptoms. Also, the persuasive evidence shows that Ms. Dennis knew as early as September 19, 1991, that her symptoms were related to her employment, as indicated by Dr. Parmelee's initial diagnosis and the plaintiff's own admissions, including her expressed intent to file a workers' compensation claim. Therefore, the three-year limitations period for Ms. Dennis's CTS claim began to run before November 1, 1991, outside the limitations period. As the Connecticut district court stated in *Einhorn,* "[t]o hold otherwise would be to recognize that the duration of the time of injury for limitations purposes may be extended by continuous and further aggravating use of a product known to be injurious." *Einhorn,* 1996 WL 684399 at *3.

## CONCLUSION

No genuine issue of material fact subverts the conclusion that Ms. Dennis had discovered all of the essential elements of a product liability cause of action under Conn.Gen.Stat. § 52–572m, before November 1, 1991. Therefore, because she initiated her action after the three-year statute of limitations had expired, this Court must grant summary judgment dismissing her RSI claim as time-barred.

Accordingly, the clerk shall **close this case** and the plaintiff hereby is informed that no further action may be taken in this matter except for the right to appeal within **30 days** of this order.

It is so ordered.